**STATE of Missouri, Respondent,**

v.

**Jerry D. COOK, Appellant.**

No. ED 91054.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Dec. 30, 2008.

Phil Dormeyer, The Statler Law Firm, L.C., Cape Girardeau, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Mary H. Moore, Assistant Attorney General, Jefferson City, MO, for Respondent.

KURT S. ODENWALD, Judge.

### Introduction

Jerry Cook (Defendant) appeals the judgment entered by the Circuit Court of Cape Girardeau County, following a jury trial convicting him of one count of driving

while intoxicated, in violation of Section 577.010, RSMo 2000,[1] and one count of assault of a law enforcement officer in the third degree, in violation of Section 565.083. Defendant was sentenced as a persistent offender to four years of incarceration for driving while intoxicated, and 30 days of incarceration for assault of an officer. Defendant appeals the trial court's decision to overrule his Motion to Suppress Evidence (Motion to Suppress) and admit evidence, which he asserts resulted from an unlawful arrest in violation of the Fourth Amendment. Although Defendant's arrest was unlawful and violated the Defendant's Fourth Amendment rights, we find the evidence at issue was not the fruit of Defendant's illegal arrest and thus, the trial court did not err in denying Defendant's Motion to Suppress or in admitting the evidence. We affirm.

## Background

At approximately 12:40 a.m. on March 17, 2007, Angela Smith (Smith) heard a vehicle accident outside her home on East Cape Rock Drive in Cape Girardeau. Upon proceeding outside, Smith observed a blue Mustang in front of a church near her home. Smith witnessed a man, whom she identified at trial to be Defendant, attempt to move the car, and then exit the car and walk east on East Cape Rock Drive. After checking the car to make sure no one was inside, Smith wrote down the license plate number and called the police.

At approximately 12:47 a.m., Officer James Ritter (Officer Ritter) with the Cape Girardeau Police Department received a call regarding a motor vehicle accident on East Cape Rock Drive. When Officer Ritter arrived, he observed the unoccupied blue Mustang in the ditch approximately two feet off the road. After a records search of the license plate, Officer Ritter determined the vehicle belonged to Krisinda Cook, who lived a block away from the accident location. Krisinda Cook is Defendant's wife.

Officer Ritter proceeded to the Cook residence. He was joined by Officer Jeff Nichols (Officer Nichols), who worked DWI enforcement with the Cape Girardeau Police Department. Both officers arrived at the Cook home less than ten minutes after the accident was reported. After the officers knocked, Defendant answered the door. While standing on the front porch, Officer Ritter asked Defendant if he had been in an accident. Defendant admitted he was involved in an accident approximately two hours prior, but did not call the police, only a tow truck. The officers discerned an odor of alcohol on Defendant's breath, and further observed that Defendant's speech was slurred, his eyes were bloodshot and watery, and his face was flushed. These observations caused the officers to believe Defendant was intoxicated. Officer Ritter then asked Defendant for his identification. Defendant requested permission from the officer to obtain his identification from inside the house and Defendant walked back into his home. The officers followed Defendant into the house through the open door.

As the officers spoke with Defendant on the front porch, Defendant's wife was inside the home. She told the officers that Defendant was drunk and had been threatening the family, and that she wanted Defendant taken to jail. Officer Ritter testified that he entered Defendant's home because he feared Defendant would flee. However, Officer Ritter further testified that he had no intention of arresting Defendant at the time he entered his home. It is unclear from the evidence whether

1. All subsequent statutory citations are to RSMo 2000, unless otherwise indicated.

Officer Ritter felt Defendant's wife's statements granted him permission to enter the home. At trial, Officer Ritter first testified that the officers did not have consent to enter the house, though later he testified that he believed Defendant's wife's words gave them permission to enter. Contrary to Officer Ritter's testimony, Officer Nichols testified that they entered the house due to several factors, including statements made by Defendant's wife, the fact that Defendant had admitted his involvement in the accident, and because Defendant was intoxicated. However, Officer Nichols also testified that, at the time he entered Defendant's home with Officer Ritter, he had no intention of arresting Defendant. Officer Nichols further testified that he did not believe Defendant was fleeing when he entered his home, and that the officers had sight of Defendant the entire time he was inside the house.

Upon the officers' entry into Defendant's home, Defendant became upset and asked them to leave. At that point the officers informed Defendant he was under arrest for leaving the scene of an accident and attempted to place Defendant under arrest. Defendant resisted the officers' attempt to arrest him, punching Officer Nichols in the chest and eventually necessitating the officers' use of a taser to subdue him. The officers were able to eventually handcuff and arrest Defendant. However, as Officer Nichols was putting Defendant into the patrol car, Defendant kicked the officer in the mouth.

Officer Nichols took Defendant to the police station and advised him of Missouri's implied consent law. When Defendant refused a breath test, Officer Nichols applied for a search warrant to obtain a sample of Defendant's blood to determine his blood alcohol content. After the search warrant was granted, Defendant was taken to St. Francis Medical Center where a laboratory assistant took a sample of Defendant's blood. Officer Nichols returned to the police station with the blood sample, which was placed into evidence and taken to the crime laboratory. Officer Nichols wrote Defendant a citation for driving while intoxicated and leaving the scene of an accident. An analysis by the Missouri State Highway Patrol Crime Laboratory determined Defendant's blood sample had a blood alcohol content of 0.186% by weight, more than twice the legal limit.

The State of Missouri (State) charged Defendant by Amended Information with four counts surrounding the events of March 17, 2007, including charges for driving while intoxicated, in violation of Section 577.010, and third-degree assault of a law enforcement officer, in violation of Section 565.083. Defendant filed a Motion to Suppress, arguing the evidence obtained against him resulted from an illegal arrest and should be suppressed. The trial court heard and denied Defendant's motion at a suppression hearing on August 14, 2007. Defendant argued his Memorandum in Support of his Motion to Suppress to the trial court prior to the start of trial on January 22, 2008, though the trial court again denied his motion.

At Defendant's trial on January 23, 2008, the State presented evidence from Smith, Officers Ritter and Nichols, the laboratory assistant at St. Francis Medical Center who took Defendant's blood sample on the morning of the arrest, and the criminalist with the toxicology section of the Highway Patrol Crime Laboratory who analyzed the blood sample for alcohol content. The State also presented exhibits including a photograph of Officer Nichols's cut lip, Defendant's blood sample, and the toxicology report prepared by the Highway Patrol Crime Laboratory.

The jury returned guilty verdicts on the charges of driving while intoxicated and

assault of a law enforcement officer, and the trial court entered a judgment accordingly. The trial court denied Defendant's Motion for a New Trial, which alleged the court failed to suppress evidence of his blood alcohol content. Defendant was sentenced as a persistent offender to four years of incarceration for driving while intoxicated and 30 days of incarceration for assault of a law enforcement officer. This appeal follows.

## Point on Appeal

Defendant asserts one point on appeal. Defendant alleges the trial court erred in denying his Motion to Suppress and admitting evidence from his unlawful arrest, including his post-arrest statements and actions, the officers' testimony regarding events that occurred during and after his arrest, the photograph of Officer Nichols's cut lip, the search warrant for his blood sample, the blood sample, the toxicology report, and the testimony of the laboratory assistant and toxicology criminalist. Defendant argues that this evidence was obtained as a result of a warrantless arrest in his home in violation of his Fourth Amendment rights against unlawful searches and seizures, and must therefore be excluded from evidence.

## Standard of Review

In reviewing a defendant's motion to suppress, the "State has the burden of going forward with the evidence and the risk of nonpersuasion to show by a preponderance of the evidence that a motion to suppress should be overruled." *State v. Berry,* 54 S.W.3d 668, 672 (Mo.App. E.D. 2001); Section 542.296. On appeal, a trial court's ruling on a motion to suppress will be reversed only if it is "clearly erroneous." *State v. Sund,* 215 S.W.3d 719, 723 (Mo. banc 2007). A trial court's ruling is deemed "clearly erroneous" if we are left

with a definite and firm belief a mistake was made. *State v. Cromer,* 186 S.W.3d 333, 341 (Mo.App. W.D.2006). We will not reverse the trial court's decision if, in light of the record reviewed in its entirety, the ruling is plausible, even if we are convinced we would have weighed the evidence differently. *State v. Heyer,* 962 S.W.2d 401, 405 (Mo.App. E.D.1998). While we give deference to the trial court's factual findings and credibility determinations and consider all evidence and reasonable inferences in the light most favorable to the trial court's ruling, we are free to disregard contrary evidence and inferences. *Sund,* 215 S.W.3d at 723; *State v. Howard,* 840 S.W.2d 250, 250 (Mo.App. E.D.1992).

However, where there is little to no dispute regarding the facts, the question of whether the conduct violates the Fourth Amendment is an issue of law that we review *de novo. Sund,* 215 S.W.3d at 723; *Cromer,* 186 S.W.3d at 341. On appeal, we consider testimony and the record made at both the motion to suppress hearing and the actual trial. *Cromer,* 186 S.W.3d at 341; *Berry,* 54 S.W.3d at 672.

## Discussion

This matter requires us to review the delicate balance that has evolved through decades of judicial decisions of the fundamental constitutional protections of the citizenry from unreasonable search and seizure and the need for law enforcement to effectively protect that same citizenry from the continuing assault by those who violate the laws enacted by our governments for the protection of all. The details of this case do not involve particularly heinous fact scenarios or egregious charges. The facts of this case do not evoke a heightened sense of outrage. At the same time, the issues raised in this appeal present for us the very basic challenge of preserving

the sanctity of our homes, and protecting our homes from unwarranted and unlawful intrusion, as guaranteed to each of us under our federal and state constitutions, without unduly constraining legitimate, appropriate and necessary acts of law enforcement officers in the performance of their duties.

### I. Preservation of Error

▉ Defendant alleges the trial court erred in denying his Motion to Suppress and in admitting a broad spectrum of evidence, including his own post-arrest statements and actions, the testimony of Officers Ritter and Nichols regarding events during and after the arrest, the photograph of Officer Nichols's lip, the search warrant for Defendant's blood sample, the blood sample, the toxicology report, and the testimony of the laboratory assistant and the criminalist with the toxicology laboratory. Fatal to much of Defendant's appeal is his failure to properly preserve most of these alleged errors for appellate review.

▉ When attacking "the validity of the admission of evidence to which a motion to suppress evidence was directed, the question to which the motion was directed must be kept alive by asserting a timely objection to its admission at trial and by raising the matter in a motion for new trial." *State v. McDaniel*, 236 S.W.3d 127, 130 (Mo.App. S.D.2007); *State v. Huchting*, 927 S.W.2d 411, 415 (Mo.App. E.D. 1996) ("The rule is well established in Missouri that when a motion to suppress evidence is denied and the evidence is subsequently offered at trial, defendant must object at trial to the admission of the evidence."). Because a ruling on a motion to suppress is interlocutory, and thus subject to change during the trial, a specific objection must be made when the evidence is offered at trial in order to preserve the issue for appellate review. *State v. Even-*

*son*, 35 S.W.3d 486, 491 (Mo.App. S.D. 2000). A failure to object to the admission of evidence at the earliest opportunity constitutes a waiver of the claim. *Id.*

Here, Defendant first objected to the admission of the evidence, based on the alleged unlawful arrest, in his pretrial Motion to Suppress. The trial court denied the Motion to Suppress. At trial, however, Officers Ritter and Nichols testified to Defendant's post-arrest statements and actions, as well as to events during and after Defendant's arrest. Defendant offered no objection to this testimony. While Defendant objected at trial when the State moved to offer certain exhibits into evidence, including the photograph of Officer Nichols's cut lip, the blood sample, and the toxicology report, Defendant did not object at trial when Officer Nichols, during his trial testimony, identified the photograph of his cut lip. We note that Defendant did object at trial when the blood sample and toxicology report first were introduced and identified by the State. However, Defendant did not object when the State presented testimony from the laboratory assistant and the criminalist with the toxicology laboratory. Defendant's failure to properly object at trial to the admission of evidence of which he now complains, other than the blood sample and toxicology report, leaves us nothing to review regarding that evidence. *State v. Rayford*, 611 S.W.2d 377, 378 (Mo.App. E.D.1981).

Not only did Defendant fail to properly object at trial to most of the evidence he now challenges, but he also failed to raise these alleged errors in his Motion for a New Trial. *State v. Hart*, 805 S.W.2d 234, 238 (Mo.App. E.D.1991). Defendant's Motion for New Trial only alleges that the trial court failed to suppress evidence of Defendant's blood alcohol content, and fails to address the other evidence Defen-

dant now claims was admitted in error by the trial court.

On appeal, we will review only that evidence to which the issue of admissibility was preserved. *See State v. Elliott,* 845 S.W.2d 115, 118 (Mo.App. S.D.1993). We will not find the trial court to have erred for admitting testimony for reasons not presented at trial. *Evenson,* 35 S.W.3d at 491. Hence, charges of error presented to us in a brief which were not advanced to the trial court are of no avail. *Id.* Accordingly, we review on appeal only Defendant's claims that the trial court erred in denying his Motion to Suppress and in admitting into evidence at trial Defendant's blood sample and corresponding toxicology report. Defendant failed to preserve the trial court's alleged error regarding the other evidence for appeal. Defendant has not requested we review the unpreserved errors under the plain error rule, and we decline to do so *sua sponte.*[2]

*II. Trial Court Did Not Err in Admitting Blood Alcohol Evidence.*

*A. Defendant's Arrest was Unlawful.*

Defendant argues the State's evidence was obtained as a result of an unlawful arrest in violation of the Fourth Amendment because the officers did not have an arrest warrant to arrest Defendant inside his home, and the State did not prove the existence of consent or exigent circumstances that would otherwise justify the warrantless arrest. From the record before us, we cannot conclude that the officers had consent to enter Defendant's home. Similarly, the record before us does not contain sufficient evidence that allows us to find the existence of exigent

circumstances that would justify the officers' warrantless entry and arrest of Defendant in his home. Defendant's arrest was unlawful and in violation of his constitutional rights.

The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, "guarantees citizens the right to be free from unreasonable searches and seizures." *State v. Burnett,* 230 S.W.3d 15, 18 (Mo. App. W.D.2007). Missouri's prohibition against unreasonable searches and seizures, contained in Article I, Section 15 of the Missouri Constitution, is "coextensive with the protection provided by the Fourth Amendment." *Cromer,* 186 S.W.3d at 343. The analysis under both the U.S. Constitution and the Missouri Constitution is identical. *Burnett,* 230 S.W.3d at 18.

The United States Supreme Court analyzed the Fourth Amendment and specifically addressed the issues regarding warrantless arrests inside a suspect's home in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The *Payton* Court examined two cases in which defendants were arrested inside their homes without a warrant. *Id.* at 576–79, 100 S.Ct. 1371. Both defendants sought to have evidence obtained during their warrantless arrests suppressed. *Id.* The Court in *Payton* noted that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed," and that it is "a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Id.* at 585–86, 100 S.Ct. 1371 (internal quotations omitted); *State v. Rutter,* 93

---

**2.** The plain error rule is set forth in Missouri Rules of Criminal Procedure 29.12(b). We note that even if we were to exercise our discretion and review the evidence that De-

fendant failed to preserve for plain error, the analysis would be identical to that set forth for the preserved errors.

S.W.3d 714, 723 (Mo. banc 2002). The Court reasoned:

> To be arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home. This is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when it is accomplished under statutory authority and when probable cause is clearly present.

*Payton*, 445 U.S. at 588–89, 100 S.Ct. 1371.

Reasoning that at the "very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion," the Court found that "[i]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house." *Id.* at 589–90, 100 S.Ct. 1371 (internal quotations omitted). The Court held that the Fourth Amendment, "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Id.* at 576, 100 S.Ct. 1371 (internal citations omitted).

 While Defendant argues the evidence presented at trial was obtained as the result of his unlawful arrest in his home, the State counters in this appeal by arguing that exigent circumstances existed to justify the warrantless entry into Defendant's home.[3] Although searches and seizures inside a home without a warrant are presumptively unreasonable, the State may overcome this presumption by demon-strating that a warrantless search or seizure falls within one of a carefully defined set of exceptions based on the presence of "exigent circumstances." *Id.* at 587 n. 25, 100 S.Ct. 1371; *Rutter*, 93 S.W.3d at 723. Exigent circumstances have been shown to exist where the time required to obtain a warrant would endanger life, allow the suspect to escape, or risk the destruction of evidence because of an imminent police presence. *State v. Kimberley*, 103 S.W.3d 850, 856 (Mo.App. W.D.2003). Exigent circumstance exceptions include pursuing a fleeing felon, preventing the imminent destruction of evidence, preventing a suspect's escape, or mitigating the risk of danger to law enforcement or other persons inside or outside of the dwelling. *Cromer*, 186 S.W.3d at 344; *see also Rutter*, 93 S.W.3d at 723 n. 5. However, exigent circumstances are rarely present when there is probable cause to believe that only a minor offense has been committed. *Rutter*, 93 S.W.3d at 723 n. 5.

While these examples can provide courts with guidance in determining the presence of exigent circumstances justifying a warrantless arrest in a suspect's home, the determination of whether exigent circumstances are present is individually analyzed on a case-by-case basis. *Cromer*, 186 S.W.3d at 344. To determine if there is an exigency, circumstances are evaluated on the basis of how said circumstances would have appeared to "prudent, cautious and trained officers." *Id.* Courts have identified a number of factors to consider when determining whether exigent circum-

---

**3.** Although the State now argues the presence of exigent circumstances in this appeal, no such argument was made by the State at the hearing on Defendant's Motion to Suppress Evidence, or at trial when the Court was requested to again consider the Motion to Suppress Evidence. In those proceedings, the State argued that Defendant's wife invited the police officers to enter the home when she said the Defendant was drunk and had threatened the family. On appeal, the State appears to have abandoned any argument made to the trial court that Defendant's wife gave consent for the officers to enter their home, and now characterizes the wife's statement as the exigency necessary to apply the exigent circumstances exception here.

stances exist that would justify a warrantless arrest, including:

(1) that a grave offense is involved, particularly a violent crime; (2) the suspect is reasonably believed to be armed; (3) a clear showing of probable cause to believe the suspect committed the offense; (4) strong reason to believe the suspect is in the premises to be entered; (5) a likelihood the suspect will escape if not swiftly apprehended; (6) the entry, though not consented, is made peaceably.

*Id.*

■ The State argues the presence of exigent circumstances because there was a clear showing of probable cause to believe Defendant committed the crime of leaving the scene of an accident, the officers knew Defendant was at the residence because he opened the door, Officer Ritter was concerned Defendant would flee, the entry was peaceful as the officers simply walked a few feet into the house, and because Defendant's wife said Defendant had threatened the family. Given our review of the record, we do not find the presence of sufficient facts that would allow the officers to violate the sanctity of Defendant's home by means of the warrantless entry and arrest of Defendant in his home.

Here, the officers arrived at Defendant's home to investigate a report of an accident where the vehicle involved was registered to Defendant's address. Defendant answered the door without having identification on him. Officer Ritter's testimony that it is "suspicious" for someone to answer their door without having identification on their person stretches common sense and logic at any hour of the day, but even more so when the "knock on the door" occurs at 1 a.m. Furthermore, a "prudent, cautious and trained officer" would not reasonably assume a suspect is fleeing because the suspect requests permission to enter his home to retrieve identification, especially when the suspect leaves the door open and remains in the officers' line of sight. Our finding is buttressed by the testimony of Officer Nichols that he was not concerned about Defendant fleeing because "[w]e had sight of him the whole time."

We recognize the record reflects that Defendant exhibited signs of intoxication and that his wife told the officers that that Defendant was drunk and had threatened the family. We also note that at the hearing on Defendant's Motion to Suppress and later at trial, the State did not argue the presence of exigent circumstances that would justify a warrantless entry and arrest. Moreover, the trial court made no findings as to the presence of exigent circumstances, presumably because the issue was not raised at the suppression hearing or at trial, and because the trial court was not requested to do so by the State. We in no way minimize the significance of statements made by a spouse concerning threatened or actual domestic violence, and agree that such statements may constitute the necessary exigency permitting a warrantless entry and arrest by law enforcement. However, the record is void of any evidence that the officers witnessed any signs of violence or threats when talking to Defendant on the front porch of his home, or when they permitted Defendant to re-enter his home to retrieve identification. The officers' belief that exigent circumstances were not present to justify their entry is underscored by the State's reliance on "consent" as the justification for the warrantless entry at the suppression hearing and later at trial.

The facts presented here are sufficiently distinguishable from those cases where exigent circumstances have been found to exist. This is not a case involving a fleeing felon. In fact, the offense for which De-

fendant was arrested in his home was relatively minor, and certainly not a "grave offense" or violent crime. *Compare State v. Wright*, 30 S.W.3d 906, 909–10 (Mo.App. E.D.2000) (where exigent circumstances were found where the crimes were "extremely grave," the police had "more than minimal probable cause to believe the defendant committed the crimes," the officers had reason to believe the defendant was in the residence because he lived there, and if the officers left the residence to get a warrant there was a likelihood the defendant would destroy the evidence of the crimes or escape). This is not a case involving fear of the imminent destruction of evidence, as the only evidence of the crime of leaving the scene of the accident was the accident scene and Defendant's vehicle, located a block away. The record before us does not suggest the presence of any evidence in the home that the officers could reasonably fear Defendant would destroy had they not followed him into his home, but instead requested and waited for an arrest warrant. *Compare State v. Glisson*, 80 S.W.3d 915, 919 (Mo.App. S.D. 2002) (finding exigent circumstances existed to justify the warrantless entry into the residence to secure the premises where suspect fled into the residence after officers obtained his identification, an odor of ether was coming from open windows on a cold February day, the officers had reason to believe there was illicit drug manufacture or possession, and the officers had reason to believe weapons were present). The State presented no evidence of any risk of danger to the officers or others, or that Defendant was armed or even had access to a weapon. *Compare Burnett*, 230 S.W.3d at 21 (holding that exigent circumstances existed to justify immediate entry into a home where a biological father, whose parental rights had been terminated for drug abuse and apparent child abuse, appeared to have infant and refused

to answer the door); *State v. McCullum*, 63 S.W.3d 242, 255 (Mo.App. S.D.2001) (finding ample evidence existed from which the trial court could reasonably infer exigent circumstances existed to justify the warrantless police entry into the home where officer had been to the home before and knew the defendant lived there, officer knew children were in the house, victim was screaming, "He set me on fire," referring to the defendant, and the officer wanted to secure the scene for "safety purposes").

In this case, a "prudent, cautious and trained officer" would not believe the time required to obtain a warrant would endanger life, allow the suspect to escape, or risk the destruction of evidence because of an imminent police presence. *Kimberley*, 103 S.W.3d at 856; *see State v. Varvil*, 686 S.W.2d 507, 512 (Mo.App. E.D.1985) (holding exigent circumstances did not exist where, even though the suspect was armed, he had been in the building several hours before the search, the entire area was "staked out," there was little chance the defendant would escape, and police had ample time to obtain a search and arrest warrant). The State failed to present any evidence of exigent circumstances that would justify the officers' intrusion into Defendant's home without a warrant. Because no exigent circumstances existed to justify the officers' entry into Defendant's residence, such entry and arrest was in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and Article I, Section 15 of the Missouri Constitution.

 While we find no basis to justify the warrantless entry and arrest of Defendant, we agree with the State, based on our review of the evidence, that probable cause existed to arrest Defendant for leaving the scene of an accident. "Probable cause to arrest exists when the arresting officer's knowledge of the particular

facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense." *State v. Clayton,* 995 S.W.2d 468, 477 (Mo. banc 1999). Here, the officers quickly responded to a report of an automobile accident, observed the vehicle on the side of the road, determined the vehicle was registered to Defendant's wife, and then immediately reported to the address shown on the vehicle registration. Defendant answered the door and admitted to driving the vehicle and his involvement in an accident, though several hours prior. Based on this information, it was reasonable for a "prudent person" to believe Defendant had committed the offense of leaving the scene of an accident. However, a probable cause finding does not make Defendant's arrest lawful. While the presence of probable cause may justify the warrantless arrest of Defendant in a public place, probable cause, without more, does not sanction the warrantless intrusion into Defendant's home by law enforcement officials.[4] *See Payton,* 445 U.S. at 589, 100 S.Ct. 1371 (holding that to be arrested in the home is "too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when it is accomplished under statutory authority and when probable cause is clearly present."); *State v. Corpier,* 793 S.W.2d 430, 435 (Mo. App. W.D.1990). The State presented no such exigent circumstances to justify entry into Defendant's home to arrest him without a warrant. Defendant's warrantless arrest in his home was unlawful.

### B. Evidence Was Not Fruit of Illegal Arrest.

■ Having determined that Defendant's arrest was unlawful, we must next determine whether the blood sample and toxicology report obtained by the State following Defendant's arrest should have been excluded as evidence at trial because of the illegal warrantless arrest. The State argues that even if the lack of exigent circumstances caused Defendant's arrest to be unlawful, the blood sample and toxicology report are nevertheless admissible because they were not obtained as fruit of the illegal arrest. We agree.

■ In general, "evidence discovered and later found to be derivative of a Fourth Amendment violation must be excluded as fruit of the poisonous tree." *State v. Miller,* 894 S.W.2d 649, 654 (Mo. banc 1995). "However, there is no steadfast rule that evidence discovered after a Fourth Amendment violation must be excluded." *Id.* Typically, the analysis used to determine whether the exclusionary rule should apply to render evidence inadmissible as fruit of the poisonous tree, is "whether, granting establishment of the primary illegality, the evidence to which objection is made has been come at by exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* (internal quotations omitted). However, in *New York v. Harris,* 495 U.S. 14, 18, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990), the United States Supreme Court held that the "attenuation analysis is only appropriate where, as a threshold matter, courts determine that the challenged evidence is in some sense the product of illegal governmental activity." (internal quotations omitted).

In *Harris,* the Supreme Court analyzed a case where police officers, with probable

4. "We acknowledge that while not always viewed favorably by our courts, warrantless arrests may be valid if they are based on probable cause." *Corpier,* 793 S.W.2d at 435 n. 1. "However, an arrest made by entry into a dwelling without a warrant, even on probable cause, is a different matter because the [F]ourth [A]mendment protects not only a liberty interest, but a privacy interest as well." *Id.*

cause but without an arrest warrant, went to Harris's home to take him into custody for a suspected murder. *Id.* at 15, 110 S.Ct. 1640. Harris allowed the officers into his home, the officers read him *Miranda*[5] rights, which he indicated he understood, and Harris then admitted to the killing. *Id.* at 15–16, 110 S.Ct. 1640. Harris was arrested, taken to the police station, and again read his *Miranda* rights. *Id.* at 16, 110 S.Ct. 1640. While at the police station, Harris signed a written inculpatory statement. *Id.* Finally, the police read Harris his *Miranda* rights a third time and videotaped an incriminating interview, even after Harris indicated he wanted to end the interrogation. *Id.* The State did not challenge the suppression of Harris's first and third statements, and the sole issue before the Court was whether the written statement made by Harris at the police station should have been suppressed because the police violated *Payton* by entering Harris's home without a warrant or consent. *Id.* The Court found that the statement should not be suppressed because "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken *after an arrest made in the home* in violation of *Payton.*" *Id.* at 21, 110 S.Ct. 1640. The Court reasoned that the statement made by Harris at the police station "was admissible because Harris was in legal custody ... and because the statement, while the product of an arrest and being in custody, was not the fruit of the fact that the arrest was made in the house rather than someplace else." *Id.* at 20, 110 S.Ct. 1640.

In cases such as this and *Harris,* the police were justified in questioning the defendant prior to his arrest and therefore, the evidence subsequently obtained *outside* of the home was not an exploitation of the illegal entry into the defendant's home. *Id.* at 19, 110 S.Ct. 1640. In *Harris* the Supreme Court declined to apply the exclusionary rule and exclude evidence obtained outside the defendant's home because "*Payton* was designed to protect the physical integrity of the home; it was not intended to grant criminal suspects ... protection for statements made outside their premises where the police have probable cause to arrest the suspect for committing a crime." *Id.* at 17, 110 S.Ct. 1640.

The facts of this case bear a strong resemblance to *Harris.* Although, Defendant was unlawfully arrested inside his home, in violation of *Payton,* the officers had probable cause to arrest Defendant, and would have been permitted to do so without a warrant had Defendant not been in his home, the very place the *Payton* Court sought to protect. Following *Payton,* any evidence seized or otherwise obtained by the officers inside of Defendant's home would be excluded for evidence upon the proper motions and timely made objections. However, as *Harris* guides us, because the officers had probable cause to arrest Defendant, the exclusionary rule does not reach to the State's use of the evidence *obtained outside of Defendant's home,* even though the evidence may have been obtained after an arrest made in violation of *Payton.* *Id.* at 21, 110 S.Ct. 1640. To carry Defendant's argument to a logical conclusion, any evidence obtained following an unlawful arrest would be excluded as fruit of the poisonous tree simply because of the unlawful arrest.[6] Judicial

---

**5.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**6.** This argument would run counter to *Harris,* as the Supreme Court points out, "Nothing in the reasoning of [*Payton*] suggests that an arrest in a home without a warrant but with

precedent neither dictates nor supports this argument. While we are concerned with the officers' failure to obtain the constitutionally required arrest warrants, the consequence of this constitutional violation is the exclusion of any evidence obtained by the police inside Defendant's home. The evidence at issue here, the blood sample and toxicology report, was obtained *outside* Defendant's home.[7] As this evidence is not the "product of an exploitation of the defendant's [F]ourth [A]mendment rights, an attenuation analysis is unnecessary." *Corpier*, 793 S.W.2d at 439.

The blood sample and toxicology report were properly admitted into evidence by the trial court because Defendant was in legal custody and because the evidence, "while the product of an arrest and being in custody, was not the fruit of the fact that the arrest was made in the house rather than someplace else." *Harris*, 495 U.S. at 20, 110 S.Ct. 1640. Suppressing the evidence taken outside of the house "would not serve the purpose of the rule that made [Defendant's] in-house arrest illegal." *Id.* at 20, 110 S.Ct. 1640.

We hold that, as in *Harris*, the officers had probable cause to arrest Defendant prior to the unlawful entry and arrest in his home, that Defendant's post-arrest detention was lawful, and the blood sample and toxicology report obtained by the State was not the fruit of the illegal arrest.

*See Corpier*, 793 S.W.2d at 439. The trial court did not err in admitting into evidence the blood sample and toxicology report.

### Conclusion

Finding no error, the judgment of the trial court is affirmed.

ROBERT G. DOWD, JR., P.J., and ROY L. RICHTER, J., Concur.

___

probable cause somehow renders unlawful continued custody of the suspect once he is removed from the house. There could be no valid claim here that Harris was immune from prosecution because his person was the fruit of an illegal arrest. Nor is there any claim that the warrantless arrest required the police to release Harris or that Harris could not be immediately rearrested if momentarily released. Because the officers had probable cause to arrest Harris for a crime, Harris was not unlawfully in custody when he was removed to the station house, given *Miranda* warnings, and allowed to talk." *Harris*, 495

U.S. at 18, 110 S.Ct. 1640 (internal citations omitted).

7. The evidence pertaining to the charge of assaulting a law enforcement officer was similarly obtained outside of Defendant's home, as the assault did not take place until after Defendant was removed from his home and Officer Nichols was attempting to place Defendant into the patrol car. We also note that the officers obtained a proper search warrant before obtaining Defendant's blood sample, which later produced the toxicology report.