

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FIVE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED100435 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court of |
| | ) | Lincoln County |
| vs. | ) | |
| | ) | Honorable Chris K. Mennemeyer |
| DANIEL J. HASTINGS, | ) | |
| | ) | Filed: November 25, 2014 |
| Defendant/Appellant. | ) | |

## I. INTRODUCTION

Defendant Daniel Hastings was convicted by jury in the Circuit Court of Lincoln County of one count of Burglary in the First Degree, section 569.160, R.S.Mo. (2000), one count of Tampering with a Motor Vehicle in the First Degree, section 569.080, R.S.Mo. (Cum. Supp. 2007), two counts of Stealing, section 570.030, R.S.Mo. (Cum. Supp. 2007), and one count of Identity Theft, section 570.223, R.S.Mo. (Cum. Supp. 2007). On appeal, Hastings argues that the trial court erred by: (1) failing to suppress evidence of his possession of identification documents belonging to victim K.R, because police obtained this evidence after a warrantless entry of his home that violated the Fourth Amendment to the United States Constitution; (2) permitting the State to refresh a witness's memory with a deposition taken in a previous case, because the deposition was taken outside the Hastings's presence; (3) failing to provide the jury with an "acting in concert" instruction, because "acting in concert" was an element of the crimes with which he was charged; and (4) demonstrating an overt

bias against him. Hastings also contends that there was insufficient evidence to support his conviction for (1) burglarizing J.R.'s home, (2) stealing prescription sunglasses and $300 in cash from J.R.'s purse, (3) stealing J.R.'s identification documents, and (4) tampering with victim S.W.'s motor vehicle. We reverse the trial court's judgment, and remand for a new trial.

## II. FACTS

As our ruling on Hastings's first point regarding warrantless entry by police into his home is dispositive of this appeal, we recount the facts of this case primarily as they relate to that point. On May 30, 2011, Illinois State Trooper Paul Moak received an anonymous tip that someone by the name of either Daniel or Dennis was attempting to sell a 2010 Hyundai Elantra for $2000. The tipster believed the car may have been stolen, and stated that it was located near a specific address in West Frankfort, Illinois.

Trooper Moak drove by the address four or five times before eventually finding the car parked in the driveway of a house across the street from the address provided by the tipster. He checked the license plate number, which revealed that the car had been stolen in Troy, Missouri. Trooper Moak called for backup, and West Frankfort municipal police officers Stacey Eaton and Shawn Tallutto arrived at the scene.

Without waiting to obtain a warrant, Trooper Moak and Officer Eaton approached the door of the house, while Officer Tallutto stayed in the driveway with the car. Officer Eaton knocked on the door of the residence and Hastings's girlfriend, Tina Spani, answered. The officers asked Spani if they could speak to "a male subject at the residence" regarding the vehicle that was parked in the driveway. While the officers were speaking with Spani on the front porch, a man, later identified as Hastings, walked from the interior of the home toward the front door, saw the police officers, and

2

then "briskly" turned around and walked back to the interior of the residence. About the ensuing events, Trooper Moak testified at the suppression hearing as follows:

Q.  And what did you do then?
A.  Officer Eaton entered the residence and detained Mr. Hastings, led him back toward the front door of the residence, that way we could speak with him regarding the vehicle in the driveway.
Q.  Where did that detention occur?
A.  I don't know because when she entered the residence she stepped around the corner and I could not see them from where I was standing. It was just inside the front door and there's an entryway and . . . [the room opens up] to the left and they stepped around that corner.
Q.  So you didn't enter the house, is that correct?
A.  I remained at the front door with Ms. Spani. Officer Eaton actually entered the house at that point.
Q.  At any point during—did you enter the house?
A.  I did. Yes.
Q.  At what point did you enter the house?
A.  Whenever Officer Eaton escorted him back toward the front door area, there's like a small foyer, walkway area at the front door.
Q.  Did you go any further in the house than the front foyer?
A.  I did not. No.

Thereafter, Trooper Moak asked Hastings for identification, and Hastings produced a wallet from his pocket. When Hastings opened the wallet, Trooper Moak observed that it contained identification documents belonging to a woman, J.R., who he knew had been the victim of a burglary in Troy, Missouri. Trooper Moak then arrested Hastings for possession of stolen identity documents, and the stolen car in the driveway was towed away for processing.

The State charged Hastings with identity theft, property damage, tampering with a motor vehicle, two counts of burglary, and four counts of stealing. These charges related both to the burglary of victim J.R.'s house, from which the identity documents, prescription sunglasses, and $300 in cash were taken, and to the theft of the car, which was stolen during a burglary of victim S.R.'s house across the street. The jury convicted Hastings of identity theft, tampering with a motor vehicle, one count of burglary, and two counts of stealing. This appeal follows.

3

## III. STANDARD OF REVIEW

"At a hearing on a motion to suppress, 'the state bears both the burden of producing evidence and the risk of non-persuasion to show by a preponderance of the evidence that the motion to suppress should be overruled.'" *State v. Grayson*, 336 S.W.3d 138, 142 (Mo. banc 2011) (quoting *State v. Franklin*, 841 S.W.2d 639, 644 (Mo. banc 1992)). "[T]his Court considers the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling," *id.* (quoting *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005)), and "reverse[s] only if clearly erroneous," *id.* (quoting *State v. Goff*, 129 S.W.3d 857, 862 (Mo. banc 2004). "This Court defers to the trial court's factual findings and credibility determinations, and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling." *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007) (citation omitted). "When, as here, there is little or no dispute about the facts, the question of whether the Fourth Amendment [to the United States Constitution] has been violated is a question of law . . . [that is] reviewed de novo." *State v. Simmons*, 158 S.W.3d 901, 907 (Mo. App. W.D. 2005).

## IV. DISCUSSION

Hastings's first point is dispositive. He argues that the trial court erred by failing to suppress evidence of his possession of identification documents belonging to victim J.R., because police obtained the evidence after entering his home without a warrant in violation of the Fourth Amendment to the United States Constitution. He asserts that his encounter with police was involuntary, that police had no probable cause to seize him, and that no exigent circumstances justified the police's warrantless entry. In response, the State contends that police had probable cause to seize Hastings, because: (1) they were there to investigate a stolen car parked in the driveway; (2) an anonymous informant had stated a man going by the name of "Daniel or Dennis" had tried to sell

4

the stolen car; and (3) the officers saw Hastings "briskly" walk away from the front door. The State also contends that exigent circumstances justified the warrantless entry, because Hastings could have fled through the rear of the home or destroyed evidence of victim J.R.'s identification documents.

"The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, 'guarantees citizens the right to be free from unreasonable searches and seizures.'" *State v. Cook*, 273 S.W.3d 562, 569 (Mo. App. E.D. 2008) (quoting *State v. Burnett*, 230 S.W.3d 15, 18 (Mo. App. W.D. 2007)). "Missouri's prohibition against unreasonable searches and seizures, contained in Article I, Section 15 of the Missouri Constitution, is 'coextensive with the protection provided by the Fourth Amendment.'" *Id.* (quoting *State v. Cromer*, 186 S.W.3d 333, 343 (Mo. App. W.D.)). "The analysis under both the U.S. Constitution and the Missouri Constitution is identical." *Id.* (quoting *Burnett*, 230 S.W.3d at 18).

"'[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed,' and that it is 'a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Id.* (quoting *Payton v. New York*, 445 U.S. 573, 585-86 (1980)); *see also Payton*, 445 U.S. at 588-89 ("[Violating] the sanctity of the home . . . . is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when . . . probable cause is clearly present." (quoting *United States v. Reed*, 572 F.2d 412, 423 (2d Cir. 1978))). Nevertheless, "the State may overcome this presumption [of unreasonableness] by demonstrating that a warrantless search or seizure falls within one of a carefully defined set of exceptions based on the presence of "exigent circumstances." *Cook*, 273 S.W.3d at 570 (citing *Payton*, 445 U.S. at 587 n.25). "Exigent circumstances exist in cases of emergency, such as when a 'delay would endanger life, allow a suspect to escape, or risk the destruction of evidence because of an imminent police presence.'" *State v. Rowland*, 73 S.W.3d 818,

822 (Mo. App. W.D. 2002) (quoting *State v. Peters*, 695 S.W.2d 140, 147 (Mo. App. W.D. 1985)); *see also Kentucky v. King*, 131 S. Ct. 1849, 1856, (2011) (recognizing exigent circumstances exceptions are: (1) to render emergency aid to the injured or protect occupant from imminent injury; (2) "hot pursuit of a fleeing suspect"; and (3) to prevent the imminent destruction of evidence); *Missouri v. McNeely*, 133 S. Ct. 1552, 1570 (2013) (recognizing same, as well as "burning building" exception). "The justification for the exigency exception is time related, i.e., there is a need that will not brook the delay incident to obtaining a warrant." *Cromer*, 186 S.W.3d at 344 (quoting *State v. Simmons*, 158 S.W.3d 901, 908 (Mo. App. S.D. 2005)).

"To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, this Court looks to the totality of circumstances," *McNeely*, 133 S. Ct. at 1559, "on a case-by-case basis," *Cook*, 273 S.W.3d at 570. We ask how the facts at the time of the entry "would have appeared to 'prudent, cautious, and trained officers,'" *Cook*, 273 S.W.3d at 570 (quoting *Cromer*, 186 S.W.3d at 344), and whether "the circumstances, viewed objectively, justify the action," *King*, 131 S. Ct. at 1859 (quoting *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006)). "We apply this 'finely tuned approach' . . . because the police action at issue lacks 'the traditional justification that . . . a warrant . . . provides.'" *McNeely*, 133 S. Ct. at 1559 (second and third alteration in original) (quoting *Atwater v. Lago Vista*, 532 U.S. 318, 347, n.16 (2001)). And we must remember that "[t]he exigent circumstances exception to the warrant requirement for police incursion into a home . . . is narrowly drawn." *Rowland*, 73 S.W.3d at 822; *see also* Coolidge *v. New Hampshire*, 403 U.S. 443, 455 (1971) (explaining "exceptions are 'jealously and carefully drawn'" (quoting *Jones v. United States*, 357 U.S. 493, 499 (1958))). "We cannot . . . excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative." *McDonald v. United States*, 335 U.S. 451, 456 (1948).

Here, Trooper Moak's testimony does not support the State's claim that exigent circumstances demanded Officer Eaton's "presumptively unreasonable" entry into Hastings's home.[1] There is no indication in the record that Officer Eaton's need to enter the premises was so urgent that she could not have waited for consent or a warrant.[2]

First, contrary to the State's argument, Officer Eaton's warrantless entry was not necessary to thwart an escape. Trooper Moak testified that he and Officer Eaton were standing on the front porch speaking with Tina Spani, when they observed Hastings walk from the interior of the residence toward the front door, then "briskly" turn around and walk back into the interior. Officer Eaton immediately entered the residence, but Trooper Moak remained on the front porch. Officer Tallutto, who was guarding the stolen car in the driveway, also remained in place. Thereafter, Officer Eaton "walked [with Hastings] back to the front door of the residence," but did not place him in handcuffs or "restrain him in any way." Trooper Moak asked Hastings for identification, and Hastings produced a wallet from his pocket. Upon observing victim J.R.'s identification documents in plain view in the wallet, Trooper Moak finally "told Mr. Hastings that he was going to be detained for further questioning."

These circumstances give no suggestion of the urgency attendant to the imminent flight of a suspect. *See Cook*, 273 S.W.3d at 571 (observing that "likelihood the suspect will escape if not swiftly apprehended" may create exigent circumstance (quoting *Cromer*, 186 S.W.3d at 344)). Nor

---

[1] Officer Eaton did not testify at the suppression hearing or at trial.

[2] We note that the trial court concluded that "Officer Eaton was voluntarily allowed in the residence" by Tina Spani before Eaton went to the rear to retrieve Hastings. Though this finding aligns with Trooper Moak's testimony at the suppression hearing, Moak testified at trial that he and Officer Eaton were "standing outside, just outside the front door of the residence . . . basically on the porch area," when Eaton "entered the residence and detained [Hastings]."

On appeal, the State does not argue that police were voluntarily allowed into the residence, and this issue is not essential to our analysis. Furthermore, even if Officer Eaton was invited into the "front foyer" of the residence, consistent with Trooper Moak's suppression hearing testimony, the record contains no indication that the scope of her invitation extended to additional areas in the rear of the residence. *See Cromer*, 186 S.W.3d at 342 ("If consent is given, law enforcement must remain within the 'scope of the consent.'" (quoting *State v. Garcia*, 930 S.W.2d 469, 472 (Mo. App. S.D. 1996))). The same Fourth Amendment analysis applies when police venture beyond the scope of their invitation without a warrant. *See id.* at 343-44.

do they suggest that Officer Eaton was in "hot pursuit" of Hastings at the moment she entered the residence. *See King*, 131 S. Ct. at 1856 (recognizing "hot pursuit of a fleeing suspect" may be exigent circumstance). Moreover, Officer Tallutto was standing guard in the driveway of the residence, where he was well positioned to thwart any attempt to flee in the stolen car. Viewing these circumstances objectively, we cannot conclude that a "prudent, cautious, and trained" officer would have had such a pressing concern that Hastings would "escape if not swiftly apprehended" as to demand a presumptively unreasonable incursion into the home. *Cf. State v. Childress*, 828 S.W.2d 935, 944 (Mo. App. S.D. 1992) ("[W]e may concern ourselves only with what the officers had reason to believe at the time of their entry . . . . [A] search is not to be made legal by what it turns up." (second and third alterations in original) (quoting *Ker v. California*, 374 U.S. 23, 40 n.14 (1963))).

Instead, Hastings's return to the interior of his residence upon seeing police at his front door is protected by the Fourth Amendment. "When law enforcement officers who are not armed with a warrant knock on a door . . . . and request[] the opportunity to speak . . . the occupant has no obligation to open the door or to speak." *King*, 131 S. Ct. at 1862. "And even if an occupant chooses to open the door and speak with the officers, the occupant need not allow the officers to enter the premises and may refuse to answer any questions at any time." *Id.* Thus, the mere withdrawal of a suspect into the interior of his or her own home does not create the exigency of an imminent escape. Permitting such an exception to the warrant requirement would swallow the principle that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Payton*, 445 U.S. at 589-90 (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)).

Moreover, contrary to the State's contention, Officer Eaton's entry into Hastings residence was not necessary to prevent the imminent destruction of victim J.R.'s identification documents. *See*

8

*Rowland*, 73 S.W.3d at 822 (recognizing need to prevent imminent destruction of evidence may be exigent circumstance). Beyond the fact of Hastings's "brisk" return to the interior of his own home—which, as we have explained, is protected by the Fourth Amendment, *King*, 131 S. Ct. at 1862—the only evidence the State cites in support of its contention that Officer Eaton's entry was necessary to prevent the imminent destruction of evidence is Trooper Moak's testimony that he was aware the owner of the stolen car "was a next door neighbor to the burglary victim [J.R.]," and that J.R.'s identification documents had been stolen in the burglary.[3] But Trooper Moak's awareness that J.R.'s identification documents might be present at the residence does not by itself justify a belief that Hastings was attempting to destroy them. *See United States v. Lynch*, 934 F.2d 1226, 1232 (11th Cir. 1991) ("The mere presence of contraband . . . does not give rise to exigent circumstances."); *United States v. Radka*, 904 F.2d 357, 362 (6th Cir. 1990) ("The mere possibility of loss or destruction of evidence is insufficient justification [for a warrantless entry]."). "[A]ffirmative proof of the likelihood of the destruction of evidence . . . [is] required." *Id.* Because there is simply nothing in the record to support the theory that the imminent destruction of evidence compelled Officer Eaton's urgent and presumptively unreasonable incursion into Hastings's home, we cannot justify the entry into the home on that basis.[4] *See United States v. Ramirez*, 676 F.3d 755, 762-63 (8th Cir. 2012) (holding warrantless entry of hotel room not justified to prevent imminent destruction of evidence of drugs, despite officers' reasonable belief suspects were in possession of drugs, and suspects' attempt to shut door of room to prevent officers' entry after officers announced their presence).

---

[3] Trooper Moak gave this testimony at the pre-trial suppression hearing. We note that at trial, however, Trooper Moak gave no indication he or Officer Eaton initially had reason to suspect the stolen car was connected to the theft of J.R.'s identity documents, or that Hastings in particular might possess them.

[4] Because Officer Eaton's warrantless entry into Hastings's residence was not justified by exigent circumstances, we need not address whether police had probable cause to believe Hastings committed an offense. *See Payton*, 445 U.S. at 588-89; *Cook*, 273 S.W.3d at 573 ("[P]robable cause, without more, does not sanction the warrantless intrusion into Defendant's home by law enforcement officials.").

Accordingly, the State's arguments that exigent circumstances justified Officer Eaton's warrantless entry are unpersuasive. Instead, as Hastings contends, police obtained the evidence of his possession of J.R.'s identification documents after illegally entering his home in violation of the Fourth Amendment to the United States Constitution. "Evidence discovered and later found to be derivative of a Fourth Amendment violation must be excluded as fruit of the poisonous tree."[5] *Oliver*, 293 S.W.3d at 442 (quoting *State v. Miller*, 894 S.W.2d 649, 654 (Mo. banc 1995)). The trial court clearly erred by failing to grant Hastings's motion to suppress this evidence.

Generally, this Court will not reverse on the basis of a federal constitutional error if the error was harmless beyond a reasonable doubt.[6] *State v. Driscoll*, 55 S.W.3d 350, 356 (Mo. banc 2001) (citing *Dawson v. Delaware*, 503 U.S. 159, 166-67 (1992)). "[T]he test for determining whether a constitutional error is harmless . . . . is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained . . . ." *Id.* (second alteration in original) (quoting *Neder*, 527 U.S. at 15). Here, the evidence of Hastings's possession of J.R.'s identity documents plainly supported Hastings's conviction of Identity Theft, section 570.223. The evidence circumstantially linked Hastings to the burglary of J.R.'s house (Burglary in the First Degree, § 569.160), in which prescription sunglasses and $300 in cash were stolen from J.R.'s purse, (two counts of Stealing, § 575.030). Likewise, Hastings's possession of the identification documents provided circumstantial evidence of his involvement in the theft of the car (Tampering with a Motor

---

[5] The State does not argue that this evidence was admissible because police inevitably would have discovered it using "standard, proper, and predictable procedures . . . [in the] pursuit of a substantial, alternative line of investigation at the time of the constitutional violation." *State v. Oliver*, 293 S.W.3d 437, 443 (Mo. banc 2009) (providing in limited circumstances that "evidence may be admissible, despite a constitutionally invalid search, if law enforcement personnel would have ultimately or inevitably discovered the evidence").

[6] "On the other hand, 'there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.'" *State v. Smith*, 595 S.W.2d 764, 766 (Mo. App. W.D. 1980) (quoting *Chapman v. California*, 386 U.S. 18, 23 (1967)). "Examples of such errors include: (1) total deprivation of the right to counsel; (2) biased judge; (3) denial of right to self-representation; and (4) lack of a public trial." *State v. Goucher*, 111 S.W.3d 915, 917 n.3 (Mo. App. S.D. 2003) (citing *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991)). Such "structural" errors require automatic reversal, because they "necessarily render[] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Washington v. Recuenco*, 548 U.S. 212, 218-19 (2006) (quoting *Neder v. United States*, 527 U.S. 1, 1 (1999)).

Vehicle, section 569.080), because the car was stolen from a house across the street from J.R.'s on the same night that the identification documents were stolen and J.R.'s checkbook was found in the car. Thus, the erroneously admitted evidence factored too prominently in the State's case to conclude "beyond a reasonable doubt that . . . [it] did not contribute to the verdict obtained" on each of the preceding counts. *State v. Whitfield*, 107 S.W.3d 253, 262 (Mo. banc 2003) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). We must reverse Hastings's conviction of one count of Burglary in the First Degree, section 569.160, one count of Tampering with a Motor Vehicle in the First Degree, section 569.080, two counts of Stealing, section 570.030, and one count of Identity Theft, section 570.223.

## V. CONCLUSION

"Although there is an inclination to avoid reversing convictions on 'procedural' grounds, particularly where the [officer's actions] bore fruit, this [C]ourt regards the protection of the Fourth Amendment as more than a mere technicality." *State v. Kriley*, 976 S.W.2d 16, 24 (Mo. App. W.D. 1998) (quoting *State v. Slavin*, 944 S.W.2d 314, 321 (Mo. App. W.D. 1997)). "It must be remembered that [t]he issue of guilt of the defendant . . . is irrelevant to the determination of whether the evidence sought to be suppressed is admissible at the trial of the criminal charge." *Id.* (quoting *Slavin, 944 S.W.2d at 321*) (alterations in original). "The Fourth Amendment is the vehicle by which all citizens' rights are protected," *id.* (quoting *Slavin*, 944 S.W.2d at 321), and "[t]he protection of . . . [these] rights supersedes any benefit derived from bending the law to secure a single conviction," *State v. Miller*, 894 S.W.2d 649, 657 (Mo. banc 1995).

As we have explained, the trial court clearly erred by failing to suppress the evidence of Hastings's possession of J.R.'s identification documents, because the evidence was obtained in violation of Hastings's Fourth Amendment rights. Moreover, we cannot say beyond a reasonable

doubt that this error did not contribute to Hastings's convictions of one count of Burglary in the First Degree, section 569.160, one count of Tampering with a Motor Vehicle in the First Degree, section 569.080, two counts of Stealing, section 570.030, and one count of Identity Theft, section 570.223. We therefore reverse the trial court's judgment of conviction on these counts, and remand for a new trial on same.

_____
Lisa S. Van Amburg, Judge


Angela T. Quigless, C.J. and
Kurt S. Odenwald, J. Concur.