**UNITED STATES of America,**

v.

**Lance PORTER, Defendant.**

**No. CRIM.A.5:03 CR 00035.**

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Oct. 24, 2003.

Paul H. Thomson, Winchester, VA, for defendant.

Bruce A. Pagel, United States Attorneys Office, Charlottesville, VA, for United States of America.

*MEMORANDUM OPINION*

MICHAEL, Senior District Judge.

Before the court is the defendant's motion to suppress evidence seized subsequent to a warrantless entry of his residence by two Winchester Police Officers responding to the reported activation of the defendant's home security alarm. For the reasons set forth below, the court finds that the officers' entry into the defendant's home did not violate his Fourth Amendment rights. Accordingly, the court will deny the defendant's motion to suppress.

I.

On April 7, 2002, at 3:47 p.m., the Winchester Police Department dispatcher transmitted a radio call regarding the activation of a home security alarm at 552 Allston Circle, the residence of defendant Lance O. Porter. Officers Brunson and Christensen of the Winchester Police Department received separate radio calls from the police dispatcher and each individually responded to the scene. Officer Brunson was first to arrive, approximately five to ten minutes after the original radio transmission.

The residence at 552 Allston Circle, an end unit townhouse with one front door and one back door, is located in a residential neighborhood. The information provided to the officers in the dispatcher's radio call indicated that the alarm was activated by the rear door to the home. At the time of Officer Brunson's arrival, there was no audible alarm sounding at the home.[1] As Officer Brunson approached the front door to begin a survey of the home, a neighbor, later identified as Mr. Barry Sutton, emerged from the adjacent townhouse, 548 Allston Circle. Sutton approached Officer Brunson and explained that a young, female child from the neighborhood opened the rear door of 552 Allston Circle possibly activating the alarm. Sutton told the officers that he observed the child open the door from his backyard, during a luncheon cookout in his backyard. Mr. Sutton explained that the child's mother then pulled her away from the door and that he subsequently heard the alarm activate. Sutton's backyard lies immediately adjacent to the defendant's backyard, with the two properties partially separated by a fence line.

After listening to the account of the incident given by Mr. Sutton, Officer Brunson surveyed the front door area of the defendant's townhouse and found no signs of forced entry or other unusual circumstances. He knocked on the front door, but received no response. Officer Brunson then proceeded to the rear door of the house with Officer Christensen who had just arrived at the scene. Upon their arrival at the rear of the house, Ms. Brianna Nei, of 544 Allston Circle, emerged from the back of Mr. Sutton's residence at 548 Allston Circle and spoke with Officer Brunson. Nei explained that it was her two-year-old daughter, Ariel, who had accidentally opened the rear door to 552 Allston Circle. Ms. Nei stated that she and her daughter were present at Mr. Sutton's cookout with other neighborhood families. Officer Brunson, however, observed no obvious signs of a party in the neighbor's backyard. Upon surveying the rear entrance to 552, the officers found the back door closed, but unlocked with no signs of forcible entry.

Officer Brunson and Officer Christensen proceeded to enter the residence at 552 Allston Circle through the rear door. Upon their entry, Officer Brunson an-

---

1. The testimony offered by Mr. Barry Sutton indicates that the alarm was audible at the time of Officer Brunson's arrival. The weight of the evidence, however, supports the court's finding that neither of the police officers heard an audible alarm at any time.

nounced his presence but received no response. The officers then conducted a sweep of the entry level of the home to determine if a crime was in progress or if there was anyone inside in need of assistance. Finding no one, Officer Brunson proceeded upstairs to the first floor of the home, where he observed clear plastic bags containing a green plant substance resembling marijuana on the kitchen table and on a nearby couch. Officer Brunson next ascended the stairs to the second floor of the home and observed substantial quantities of U.S. paper currency on top of a dresser. The sweep of the inside of the home lasted approximately five minutes. After this preliminary sweep, finding no one present inside the home, the officers exited the residence. Officer Christensen remained immediately outside the home to secure the front door. Meanwhile, Officer Brunson contacted his supervising officers, Sergeant Danielson and Lieutenant Griffith, and waited for instructions to follow.

During this time, the defendant arrived at his home accompanied by an unidentified female. Sergeant Danielson arrived at the scene shortly thereafter. Sergeant Danielson asked the defendant to consent to a search of his home, but the defendant declined. Lacking the defendant's consent to conduct a search, Officer Brunson and Sergeant Danielson departed to obtain a warrant to search the defendant's residence. The search warrant was successfully obtained, and Sergeant Danielson and Officer Brunson returned to the defendant's home to execute and to serve the warrant. The search revealed eighteen bags of marijuana (weighing in total approximately one ounce), a handgun, weight scales, three thousand dollars in U.S. currency, and plastic wrap coated in motor oil or grease.

## II.

▇ The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. While the Fourth Amendment protects the individual's privacy in a variety of settings, nowhere "is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home." *Payton v. New York,* 445 U.S. 573, 589–90, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Indeed, it is widely recognized that physical entry of the home is "the chief evil" against which the protections of the Fourth Amendment apply. *United States v. United States Dist. Ct.,* 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). Because of this heightened privacy interest, warrantless entry into an individual's home is presumptively unreasonable. *Payton,* 445 U.S. at 586, 100 S.Ct. 1371.

▇ Warrantless entry of a home may be, however, constitutionally permissible if the intrusion falls within one of the carefully defined exceptions to the warrant requirement. *United States v. Cephas,* 254 F.3d 488, 494 (4th Cir.2001). Among the recognized exceptions to the general warrant requirement is the existence of exigent circumstances. Exigent circumstances arise where "law enforcement officers confront a compelling necessity for immediate action that w[ould] not brook the delay of obtaining a warrant." *United States v. Wiggins,* 192 F.Supp.2d 493, 498 (E.D.Va.2002) (quoting *United States v. Tibolt,* 72 F.3d 965, 969 (1st Cir.1995)). For example, the Fourth Circuit Court of Appeals has held that exigent circumstances justifying warrantless entry exist where "police officers (1) have probable cause to believe that evidence of illegal activity is present and (2) reasonably believe that evidence may be destroyed or removed before they could obtain a warrant." *Cephas,* 254 F.3d at 494–95.

Yet another judicially recognized exigency justifying warrantless entry occurs when the delay in obtaining a warrant poses a threat to the safety of police officers or of the general public. *Wiggins*, 192 F.Supp.2d at 501. This "emergency doctrine" permits warrantless entry of a home when the circumstances call for "immediate entry [ ] incident to the service and protective functions of the police, as opposed to, or as a complement to, their law enforcement functions." *United States v. Moss*, 963 F.2d 673, 678 (4th Cir.1992); *see also Murdock v. Stout*, 54 F.3d 1437, 1441 (9th Cir.1995) (defining exigent circumstances to exist where "necessary to prevent physical harm to [police] officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating law enforcement efforts."). For the emergency doctrine to apply, however, the person making the entry must have had an objectively reasonable belief that "an emergency existed that required immediate entry to render assistance or prevent harm to persons or property within." *Id.* Such a belief must exist as of the moment of the officers' entry into a home, with courts taking into consideration "[t]he appearance of the scene of the search in the circumstances presented as it would appear to reasonable and prudent men standing in the shoes of the officers." *United States v. Reed*, 935 F.2d 641, 643 (4th Cir.1991).

Because the existence of exigent circumstances depends, in essence, on an evaluation of the reasonableness of the officers' actions, the test evades precise formulation. *See O'Connor v. Ortega*, 480 U.S. 709, 731, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (Scalia, J., concurring). Rather, the presence or absence of emergency circumstances will vary from case to case depending on the inherent necessities presented by the facts of each. *Reed*, 935 F.2d at 642. It is therefore helpful to review cases in which other courts faced with similar circumstances have found the existence of an exigency to justify entry of a home.

Police generally have been found to be justified in entering a home in response to a reported burglary or home security alarm, even absent a warrant, so long as the totality of the facts and circumstances support the likelihood that a burglary may be in progress. For example, in *Reardon v. Wroan*, 811 F.2d 1025 (7th Cir.1987), police were called to investigate a reported burglary in progress. The police knew that the address given belonged to a fraternity house, that the local university students were on a holiday break, and that burglaries occurred more frequently during that time of year. Upon arrival, the police found the back door unlocked and observed that the house was completely dark. The Seventh Circuit Court of Appeals determined that these circumstances were sufficient to justify the officer's entry under the exigent circumstances doctrine. *Id.* at 1030. Other courts addressing the validity of a warrantless search under similar conditions have reached the same result. *See Bilida v. McCleod*, 211 F.3d 166 (1st Cir.2000) (officer's entry into fenced backyard in response to silent security alarm supported reasonable perception of imminent threat sufficient to justify warrantless entry); *United States v. Tibolt*, 72 F.3d 965, 970–71 (1st Cir.1995) (officers responding to a security alarm who inadvertently entered wrong home nonetheless justified in doing so; security alarm, along with unlocked rear door, supported officers' reasonable suspicion of a possible break-in justifying entry); *Murdock v. Stout*, 54 F.3d 1437 (9th Cir.1995) (officers' observation of open patio door and failure to elicit a response from resident when circumstances suggested that a resident should have been present supported finding of exigent circumstances); *United States v. Johnson*, 9 F.3d 506 (6th Cir.

1993) (officer's observation of broken window while responding to burglary report was exigent circumstance justifying warrantless entry); *United States v. Dighera,* 2 F.Supp.2d 1377 (D.Kan.1998) (officer responding to security alarm with no response within residence presented exigent circumstances permitting immediate warrantless entry).

■ Here, the officers arrived on the scene with the sole understanding that a home security alarm had been activated. These officers had been trained, and properly so, to investigate the alarm and to determine whether any additional signs suggesting a break-in, including an open window or unlocked door, could be observed. The cases noted above suggest that, were these the exclusive circumstances confronting the officers at the time of their arrival, entry following an announcement would be justified under the exigency doctrine. This case, however, presents a somewhat more nuanced set of circumstances in that the officers were confronted with a plausible explanation for the activation of the home security alarm. The court recognizes that, in retrospect, the explanation provided by both Mr. Sutton and Ms. Nei for the triggering of the alarm was perfectly reasonable and consistent with the officers' general observations. Nonetheless, the court is not persuaded that the limited information provided by the defendant's neighbors lead to the conclusion that the officers acted unreasonably in entering the defendant's home without a warrant.

■ First, given the need for police to make complicated judgements in what is frequently a very short period of time, the exigent circumstances doctrine requires courts to give some deference to the decisions of trained law enforcement officers in the field and thereby to avoid " 'unreasonable second-guessing' of the officers' assessment of the circumstances that they

faced." *Figg v. Schroeder,* 312 F.3d 625, 639 (4th Cir.2002) (quoting *United States v. Montoya de Hernandez,* 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985)). The officers' determination that, despite the explanation provided by the defendant's neighbors, there nonetheless might be reason to investigate further is one such judgment worthy of deference.

Second, there can be no doubt that the conduct of the officers in this instance was exactly the type of police work the community would expect, and possibly even demand. *But see Chicago v. Morales,* 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (community's approval of anti-gang ordinance did not cure its constitutional invalidity). Indeed, the very presence of a security system in the defendant's home suggests the police would be in dereliction of their duties had they not decided to investigate absent the presence of a resident. *See Murdock v. Stout,* 54 F.3d 1437, 1442 (9th Cir.1995) ("[W]e are convinced that citizens in the community would have understandably viewed the officers' actions as poor police work if they had left the scene or failed to investigate further at once."). In this case, it is easy to imagine the likely community outrage had the police failed to investigate and had there actually been someone in need of immediate assistance inside the home.

Finally, the activation of an alarm in conjunction with additional information supporting the possibility of a break-in is sufficient to support police officers' determination that an exigency exists. The very purpose for a home security alarm is to signal that something may be amiss. In the face of an alarm, officers may reasonably conclude that a burglary may be in progress and may conclude, as here, that a neighbor's explanation to the contrary is not entirely credible. While this court by no means suggests that the police have

license to enter a private residence every time an alarm is activated, they do have a duty to investigate, and, when the facts and circumstances suggest reasonable suspicion that an exigency exists, to enter the home. In the face of such circumstances, "[i]t would defy reason to suppose that [law enforcement officers] had to secure a warrant before investigating, leaving the putative burglars free to complete their crime unmolested." *United States v. Singer,* 687 F.2d 1135, 1144 (8th Cir.1982).

In short, although the court recognizes the importance of preserving privacy of the home under established Fourth Amendment principles, it also acknowledges that there are circumstances in which law enforcement officers must be permitted to enter a home absent a warrant. The exigency exception to the warrant requirement recognizes several such circumstances, including the need to permit officers to respond where police or public safety is reasonably believed to be implicated. This court is of the view that the circumstances confronting Officers Brunson and Christensen present this type of exigency, and therefore their warrantless entry of the defendant's home was justified.

### III.

■ There is little dispute that, no violation of the Fourth Amendment having been found in the officers' initial entry, no further basis for exclusion of the evidence in question exists. The officers limited the scope of their initial entry to the justification for doing so. *See Mincey v. Arizona,* 437 U.S. 385, 393, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). The officers conducted a brief sweep of the residence, limiting their search to a visual observation of each floor of the home. Their search was restricted in scope to that necessary to determine whether a crime was in progress or a resident was in need of assistance. During the course of the sweep, and with-

out exceeding the scope of the justification for the search, the officers observed contraband, the incriminating nature of which was apparent, in "plain view" in several locations around the home. While in the residence, the officers did not touch, pick up, or seize any of the items observed, despite the fact that they would have been justified in doing so. *See Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). Rather, they took the more cautious approach, relying on their observations to support their application for a search warrant. Having obtained a warrant, there is no doubt the officers' subsequent entry passes Fourth Amendment muster. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

### IV.

For the foregoing reasons, the court finds that exigent circumstances existed at the time the officers' entered the defendant's home, thereby justifying their entry without a warrant. Accordingly, the defendant's motion to suppress shall be denied. An appropriate order shall this day issue.

The Clerk of the Court hereby is directed to send a certified copy of this memorandum opinion to all counsel of record.

### *ORDER*

Before the court is the defendant's Motion to Suppress Statements and Tangible Evidence, filed August 6, 2003. For the reasons set forth in the accompanying Memorandum Opinion, it is this day

### ADJUDGED, ORDERED, AND DECREED

as follows:

1. The defendant's Motion to Suppress Statements and Tangible Evidence, filed

August 6, 2003, shall be, and it hereby is, DENIED.

2. The Clerk of the Court shall be, and hereby is, directed to set this matter for trial.

The Clerk of the Court hereby is directed to send a certified copy of this Order and the accompanying Memorandum Opinion to all counsel of record.     .