**STATE of Missouri, Respondent,**

v.

**Michael Allen DUFF, Appellant.**

**No. WD 69598.**

Missouri Court of Appeals, Western District.

March 3, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 2009.

Scott Cameron Hamilton, Lexington, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Jefferson City, MO, for respondent.

Before DIV II: HARDWICK, P.J., HOWARD and DANDURAND [1], JJ.

LISA WHITE HARDWICK, Judge.

Following a bench trial, the circuit court convicted Michael Allen Duff of distribution of a controlled substance, possession of a controlled substance with intent to distribute, and possession of a controlled substance. Duff raises four points on ap-

peal. In his first three points, he contests the sufficiency of the evidence supporting his convictions. In his last point, he alleges the court violated his right against double jeopardy by convicting him of both possession of a controlled substance with intent to distribute and possession of a controlled substance. For reasons explained herein, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

On May 30, 2006, Ashley Elliott, a confidential informant, contacted Chris Brown, the Director of the North Missouri Drug Task Force, about a drug transaction she had arranged. Elliott told Brown that she had arranged with Martha Reed, who was Duff's girlfriend, to buy a quarter ounce of marijuana at Duff's home in Brunswick later that day. Brown met with Elliott, concealed a tape recorder on her, and gave her money to buy the marijuana. Brown and Elliott then drove separately to Duff's home. Brown waited outside in his car while Elliott went to the door.

Duff invited Elliott inside. They talked while waiting for Reed to return home. When Reed arrived, she walked over to the recliner chair where Duff was sitting and handed him baggies of marijuana. Duff asked Reed how much marijuana Elliott "was there for," and she told him. Duff then asked Reed if Elliott had smoked any of the marijuana with her before, and Reed told him she had not. Elliott asked whether it was "good stuff," and Duff responded that it was "not bad." Elliott gave $40 to Reed, who gave the money to Duff. Duff handed Reed $10 and a baggie with marijuana in it. Reed handed the money and the baggie to Elliott. Elliott asked whether the baggie contained "a quarter," referring to a quarter of an

1. Judge Dandurand was a member of this court at the time the case was submitted, but has since resigned.

ounce of marijuana. Reed responded, "Yeah." Before she left, Elliott asked Reed and Duff whether they would have more marijuana if she needed it. Reed told her they "always have it." Elliott left Duff's house and reported back to Brown.

Brown retrieved the money, tape recorder, and marijuana from Elliott. He took the marijuana to the Missouri State Highway Patrol Laboratory, where it was analyzed and determined to be 5.79 grams of marijuana. Brown then obtained a warrant to search Duff's residence.

Upon entering the home on June 6, 2006, the officers arrested Duff and did a pat-down search. They found a plastic baggie containing marijuana in his pants pocket. They proceeded to search Duff's home. Next to the recliner in Duff's living room, they found a cigarette box that had roach cigarettes [2] and two marijuana cigarettes in it. In the pocket of the recliner, the officers found rolling papers and a cigarette roller.

One of the officers testified that he smelled a strong odor of processed marijuana emanating throughout the upstairs of the home. There were two bedrooms upstairs. The east bedroom belonged to a minor female child. The west bedroom was Duff's. The officers followed the marijuana smell to Duff's bedroom, where they found, in addition to male clothing, an ashtray that had roach cigarettes in it and a Kleenex box with a plastic bag of marijuana inside of it on the nightstand. The strongest odor was coming from the closet in Duff's bedroom. The closet, which contained male clothing, led into the attic.

In the attic, the officers found two large plastic bags that had individually-wrapped smaller plastic baggies of marijuana inside

of them. One of the large plastic bags held twenty-one individually-wrapped baggies of marijuana, while the other large bag held nine. In addition to the marijuana, officers found a packet of rolling papers, a roach clip with a bullet, and two empty plastic baggies attached to finger scales. According to Susan Lett, one of the North Missouri Drug Task Force detectives who executed the search, drug dealers use finger scales to ensure they are selling a certain weight of the drug. Also in the attic, the officers found a plastic bag of marijuana seeds, a grow light, and a timer that was affixed to a piece of wood. Lett testified that people who grow marijuana often use a timer to ensure that their grow lights turn on at certain times to provide sufficient artificial sunlight for the marijuana plants.

The officers submitted all of the seized items to the highway patrol laboratory. The lab report indicated that the thirty individual baggies found in Duff's attic collectively contained 162.61 grams of marijuana. The baggie found in the pocket of Duff's pants contained less than a gram of marijuana.

The State charged Duff with distribution of a controlled substance, in violation of Section 195.211, RSMo Cum. Supp. 2008, possession of a controlled substance with intent to distribute, in violation of Section 195.211, RSMo Cum. Supp. 2008, and possession of a controlled substance, in violation of Section 195.202, RSMo 2000.[3] Duff waived his right to a jury trial. Following a bench trial, the court found Duff guilty on all counts and sentenced him to consecutive prison sentences of five years for distribution of a controlled substance and

2. According to the trial testimony, a "roach" cigarette is "the very last part of a marijuana cigarette" that has not yet been discarded.

3. All statutory references are to the Revised Statutes of Missouri (2000), unless otherwise indicated.

ten years for possession of a controlled substance with intent to distribute. The court sentenced Duff to one year in jail for possession of a controlled substance, to be served concurrently with the other sentences. Duff appeals.

## STANDARD OF REVIEW

Three of Duff's points on appeal challenge the sufficiency of the evidence supporting his convictions. In reviewing the sufficiency of the evidence in a court-tried criminal case, we apply the same standard as in a jury-tried case. *State v. Sladek*, 835 S.W.2d 308, 310 (Mo. banc 1992). Our role is limited to determining whether the State presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty beyond a reasonable doubt. *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002). We consider the evidence and inferences in the light most favorable to the verdict, disregarding all contrary evidence and inferences. *Id.* at 407–08.

## SUFFICIENCY OF EVIDENCE OF DISTRIBUTION

■ In Points I and II, Duff contests the sufficiency of the evidence supporting his conviction for distribution of a controlled substance. Section 195.211.1, RSMo Cum. Supp. 2008, makes it "unlawful for any person to distribute, deliver, manufacture, [or] produce ... a controlled substance[.]" Anyone who violates this section "with respect to any controlled substance except five grams or less of marijuana is guilty of a class B felony." Section 195.211.3, RSMo Cum. Supp. 2008. In the complaint, the State charged that Duff "knowingly distributed more than 5 grams of marijuana, a controlled substance, to Ashley Elliott, knowing that it was a controlled substance."

In Point I, Duff contends the evidence was insufficient to find that he knew the baggie he distributed to Elliott contained more than five grams of marijuana. To be found guilty of unlawful distribution under Section 195.211, RSMo Cum. Supp. 2008, Duff must have acted purposely or knowingly. *State v. McQuary*, 173 S.W.3d 663, 667 (Mo.App.2005). "A person 'acts knowingly' or with knowledge ... [w]ith respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist[.]" Section 562.016.3(1). "'Knowledge may be proven by circumstantial evidence.'" *McQuary*, 173 S.W.3d at 667–68 (citation omitted).

The evidence showed that Reed handed multiple baggies of marijuana to Duff when she arrived at his home on May 30, 2006. Duff then asked Reed how much marijuana Elliott "was there for." After Reed told Duff the amount of marijuana Elliott "was there for" and Reed collected Elliott's money, Duff handed the baggie, which was later found to contain 5.79 grams of marijuana, to Reed to give to Elliott. The court could reasonably infer that, because Duff selected—from the multiple baggies of marijuana Reed handed to him—the particular baggie to sell to Elliott after inquiring how much marijuana Elliott wanted, Duff knew the amount of marijuana he was distributing to Elliott.

Moreover, after Elliott received the baggie, she asked if the amount in the baggie was "a quarter." Reed, with Duff nearby, replied that it was. Brown testified that the phrase "a quarter," as used in drug transactions, refers to one quarter of an ounce. We have previously recognized that "'[u]nder avoirdupois weight, commonly used in this country, one ounce equals 28.349 grams.'" *State v. McCleod*, 186 S.W.3d 439, 446 n. 5 (Mo.App.2006) (citation omitted). Thus, one quarter of an ounce would be approximately seven grams. Although the amount of marijuana

contained in the baggie was not quite seven grams, the court could reasonably infer that Duff, like Reed, believed the baggie contained approximately seven grams of marijuana. The court could also conclude, from the officers' recovery of finger scales along with the stash of individually-wrapped marijuana in the attic off of Duff's bedroom, that Duff measured out quantities of marijuana before bagging them for sale. Hence, the court could infer that Duff knew the approximate weight of each baggie he sold. The evidence was sufficient to support a finding that Duff knew he distributed at least five grams of marijuana to Elliott. Point I is denied.

In Point II, Duff claims that the evidence was insufficient for the court to find that he aided or participated in distributing the marijuana to Elliott. Duff was convicted under the theory that he distributed the marijuana to Elliott in concert with Reed. With respect to accomplice liability, Missouri does not distinguish between principals and accessories. *State v. Wurtzberger*, 40 S.W.3d 893, 895 (Mo. banc 2001). "[A]ll persons who act in concert to commit a crime are equally guilty." *Id.* Pursuant to Section 562.041.1(2), a person is criminally responsible for another's conduct when "[e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense."

" 'To make a submissible case of aiding and abetting, there must be some evidence that defendant associated himself with the venture or participated in the crime in some manner.' " *State v. Bradshaw*, 26 S.W.3d 461, 469 (Mo.App.2000) (citation omitted). The State is not required to show that the defendant personally committed every element of the crime.

*Id.* The defendant's "mere encouragement is enough." *Id.* " '[A]ny evidence that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction.' " *Wurtzberger*, 40 S.W.3d at 896 (citation omitted).

The evidence in this case showed that, after Reed handed several baggies of marijuana to Duff, he inquired as to how much Elliott wanted to buy. Reed collected Elliott's $40 and gave it to Duff, who then gave Reed $10 in change to give back to Elliott. Duff selected one of the baggies of marijuana and gave it to Reed, who gave it to Elliott. In addition to handling the money, making change, and selecting the baggie of marijuana to give to Elliott, Duff also vouched for its quality, telling Elliott when she asked if it was "good stuff" that it was "not bad." The evidence was sufficient for the court to find that Duff affirmatively participated in the drug transaction. Point II is denied.

### Sufficiency of Evidence of Possession With Intent to Distribute

In Point III, Duff claims that the evidence was insufficient to convict him of possession with intent to distribute. To convict Duff under Section 195.211, RSMo Cum. Supp. 2008, the State had to prove that Duff possessed the marijuana and had the intent to distribute it. Possession is established by showing: (1) conscious and intentional possession of the substance, either actual or constructive; and (2) an awareness or knowledge of the presence and nature of the substance. *State v. Purlee*, 839 S.W.2d 584, 587 (Mo. banc 1992). "Both possession and knowledge may be proved by circumstantial evidence." *Id.*

Duff did not have actual possession of the marijuana in the attic, as it was not found on his person or within his easy reach and convenient control. *State*

*v. Bacon,* 156 S.W.3d 372, 377 (Mo.App. 2005). Where there is no evidence of actual possession, constructive possession may be shown if the facts support an inference that the defendant had knowledge of the presence of the controlled substance. *Purlee,* 839 S.W.2d at 588. Thus, at a minimum, constructive possession requires a showing of the defendant's access to and control over the premises where the substance was found. *Id.*

 The defendant's exclusive control over the premises is sufficient to raise an inference of possession and knowledge. *Id.* Although Duff was the sole owner of the home, he did not have exclusive control over the premises, as the evidence showed that Reed lived with him. Joint control of the premises requires evidence of additional incriminating circumstances that imply the defendant knew the drugs were present and had them under his control. *Id.* Additional incriminating circumstances may include a strong odor of the drug on the premises, *id.,* " 'routine access to an area where such substances are kept, the presence of large quantities of the substance at the scene where [the defendant] is arrested, admissions of the accused, ... being in close proximity to drugs or drug paraphernalia in plain view of the police, [and the] mixture of defendant's personal belongings with the drugs.' " *Bacon,* 156 S.W.3d at 378 (citation omitted). We consider the totality of the circumstances to determine whether the State proved sufficient additional incriminating circumstances. *Id.*

In this case, one of the officers who executed the warrant was able to smell a strong odor of processed marijuana as he began walking up the stairs in Duff's home. The odor of marijuana was so strong that the officers were able to follow the smell to find the marijuana in the attic. Duff had routine access to the attic, as the entrance to the attic was accessible from the closet in his bedroom. The officers discerned that the bedroom was Duff's because there was male clothing in the room and in the closet, and the only other bedroom on the second floor belonged to a minor female child. A significant amount of marijuana—thirty baggies containing a total of 162.61 grams—was found in the attic, along with seeds and equipment used to grow marijuana, items used to smoke marijuana, and materials used to package and sell marijuana. Additionally, drugs and drug paraphernalia were found in plain view and intermingled with Duff's belongings throughout the house. In the living room next to the recliner, the officers found a cigarette box with roach cigarettes and marijuana cigarettes in it. On the nightstand in Duff's bedroom, the officers found an ashtray containing roach cigarettes and a Kleenex box with a plastic bag of marijuana inside of it.

Duff's statements and conduct also imply his knowledge and control of the marijuana found in his attic. During the sale to Elliott just one week before the search, Duff vouched for the quality of the marijuana he and Reed had sold to her. Likewise, he did not contradict Reed when, upon Elliott's asking if she could buy more marijuana from them in the future, Reed told Elliott that they "always have it." The totality of the circumstances supports the circuit court's finding that Duff jointly and constructively possessed the marijuana found in the attic and he was fully aware of its nature and presence.

 Duff next argues that the evidence was insufficient for the court to find that he intended to deliver the marijuana to anyone. In his brief, Duff relies heavily upon *McCleod,* 186 S.W.3d 439. In *McCleod,* we held that the fact that the defendant "was found in possession of approximately 7½ ounces of marijuana was

not sufficient, in and of itself, to establish beyond a reasonable doubt that he intended to deliver the marijuana to others." *Id.* at 448. We noted that, although law enforcement officers testified that the amount of marijuana found was a " 'sales amount,' " they did not testify that the amount was "wholly inconsistent with personal use." *Id.* The officers' opinion testimony, "without more," was insufficient "to sustain a conviction based upon this small a quantity of marijuana." *Id.*

Duff acknowledges that, unlike in *McCleod,* the approximately 5.74 ounces of marijuana found in his attic was divided into smaller amounts and was individually-wrapped in thirty baggies. He admits that a reasonable inference from this evidence is that the baggies were packaged for distribution. *See State v. Salyer,* 884 S.W.2d 354, 357 (Mo.App.1994) (noting that "[t]he presence of uniform measured quantities is a circumstance indicating a purpose of distribution[.]"). Nevertheless, he claims that the court could have inferred that he merely purchased the baggies for his personal use, an inference that he contends is supported by other evidence of personal use, such as the rolling paper, burnt roaches, and roach clip that the officers found in his home.

In making this argument, Duff ignores our standard of review. We review the evidence and inferences in the light most favorable to the circuit court's judgment, disregarding all contrary evidence and inferences. *Crawford,* 68 S.W.3d at 407–08. While the court could have inferred that Duff intended to consume the baggies of marijuana found in his attic, it did not. Instead, the court inferred that Duff intended to distribute the thirty baggies of marijuana. Such an inference was not only reasonable, but was further supported by the finger scales and empty baggies found with the stash of individually-wrapped baggies of marijuana in the attic. *See State v. Lloyd,* 205 S.W.3d 893, 909 (Mo.App.2006), and *Salyer,* 884 S.W.2d at 358. Sufficient evidence supports the court's finding that Duff intended to distribute the marijuana found in his attic. Point III is denied.

## DOUBLE JEOPARDY

In Point IV, Duff claims that the circuit court violated his right to be free from double jeopardy by convicting him of both possession of a controlled substance with intent to distribute and possession of a controlled substance. Duff raises this claim for the first time on appeal and, therefore, requests plain error review. We will review an unpreserved double jeopardy claim for plain error when we " 'can determine from the face of the record that the court had no power to enter the conviction.' " *State v. Johnson,* 245 S.W.3d 288, 293 (Mo.App.2008) (citation omitted).

Protections against double jeopardy arise from the Fifth Amendment to the United States Constitution, which provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb[.]" This provision protects defendants against (1) successive prosecutions for the same offense after either an acquittal or a conviction and (2) multiple punishments for the same offense. *State v. Flenoy,* 968 S.W.2d 141, 143 (Mo. banc 1998). The protection, however, applies only to multiple punishments or prosecutions for the same offense. *Id.* "Multiple convictions are permissible if the defendant has in law and in fact committed separate crimes." *Id.*

Duff argues he could not be convicted of both crimes because one was a lesser-included offense of the other. He relies on *State v. Mizanskey,* 901 S.W.2d 95, 98–99 (Mo.App.1995), a case in which we found

that (1) possession of a controlled substance was a lesser-included offense of possession of a controlled substance with intent to distribute; and (2) because the evidence supported bases for acquittal of the greater offense and conviction of the lesser offense, the court should have instructed the jury on both offenses. Duff also cites Missouri's general cumulative punishment statute, Section 556.041(1), which provides that a defendant may not be convicted of more than one offense arising from the same conduct when one offense is included in the other. An offense is a lesser-included offense when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]" Section 556.046.1(1), RSMo Cum. Supp. 2008.

Neither double jeopardy principles nor Section 556.041(1) are implicated in this case, however, because Duff was charged, tried, and convicted of separate crimes based upon different conduct and different evidence. The complaint charged Duff with committing the class B felony of possession of a controlled substance with intent to distribute it, in violation of Section 195.211, RSMo Cum. Supp. 2008, in that he possessed, with the intent to distribute, more than five grams of marijuana. The State's evidence on this charge concerned Duff's constructive possession and intent to distribute the 162.61 grams of marijuana found in his attic.

The possession offense for which Duff was charged was the class A misdemeanor of possession of a controlled substance. Possession of a controlled substance under Section 195.202 is generally a class C felony. Section 195.202.2. Where the person possesses "not more than thirty-five grams of marijuana," however, the offense is a class A misdemeanor. Section 195.202.3. The State's evidence on this charge con-

cerned Duff's actual possession of a baggie, which contained less than a gram of marijuana, found in his pants pocket during a pat-down search following his arrest.

Duff's convictions for possession with intent to distribute and possession of a controlled substance were based upon different conduct, different evidence, and different legal theories. In law and in fact, Duff committed two separate crimes. From the face of the record, we find that the circuit court had the power to enter both convictions against him. Point IV is denied.

### CONCLUSION

We affirm the circuit court's judgment.

All Concur.