**STATE of Missouri, Respondent,**

v.

**Melissa R. WARREN, Appellant.**

**No. WD 70671.**

Missouri Court of Appeals, Western District.

March 16, 2010.

Margaret M. Johnston, Columbia, MO, for Appellant.

Chris Koster, Shaun J. Mackelprang and James B. Farnsworth, Jefferson City, MO, for Respondent.

Before JAMES EDWARD WELSH, P.J., MARK D. PFEIFFER, and KAREN KING MITCHELL, JJ.

JAMES EDWARD WELSH, Judge.

Melissa R. Warren appeals the circuit court's judgment convicting her of possession of more than thirty-five grams of marijuana. She claims that there was insufficient evidence to support her conviction and that the circuit court erred in overruling her motion to suppress the marijuana and drug paraphernalia seized from her home. We affirm.

Viewed in the light most favorable to the circuit court's judgment, the evidence established that on the afternoon of June 7, 2007, Deputy Steven DeVenney of the Boone County Sheriff's Department was dispatched to Warren's address to respond to an activated burglar alarm. According to DeVenney, when a security agency contracts with a homeowner, the security company contacts the police any time the homeowner's security alarm is triggered and asks the police to check on the alarm. When DeVenney arrived at Warren's house, the alarm was still sounding. DeVenney checked the perimeter of the house. He did not find anyone outside, so he went to the front door. DeVenney noticed that the front door was unlocked and ajar. He contacted the dispatcher to ensure that the alarm was still "active," that is, that the security company had not received an authorized cancellation of the alarm. The dispatcher confirmed that the alarm was still active. DeVenney asked the dispatcher to send backup.

Shortly thereafter, Deputy Eli Burkholder arrived. He and DeVenney knocked on the front door and announced their presence. No one responded. The deputies pushed the door open. Still outside the house, they announced their presence a second time. No one answered. They decided to go inside the house to ensure that there was not a crime in progress or a victim in need of assistance inside the residence. The deputies went through the house but did not find anyone.

The deputies did, however, find marijuana and drug paraphernalia in plain view. In the kitchen, they saw loose marijuana scattered on the countertop near the stove. Near the loose marijuana, they saw a digital scale with bits of marijuana on top of it.

There were plastic baggies by the scale. In the master bedroom, the deputies saw marijuana on an end table, along with more plastic baggies and cigar boxes.[1] The deputies photographed the marijuana and paraphernalia and secured those items.

As the deputies were securing the items, James Hayes arrived. Hayes was Warren's longtime boyfriend. He lived in the house with Warren and their two children. Hayes declined to give his consent to a search of the house, so the deputies called a detective to obtain a search warrant. Hayes called Warren and told her that the police were at the house and that she needed to come home. Hayes then left.

While the deputies were waiting for the search warrant, Warren came home. Warren was "very, very agitated" when she arrived. She began yelling and cursing at the deputies. She asked them several times to leave, and she repeatedly told DeVenney, "Get the fuck up out of my shit."

Despite DeVenney's telling Warren that she could not enter the house because they were in the process of obtaining a search warrant, she went into the house. DeVenney did not want to forcibly restrict her from going into the house because she told him that she was pregnant. The deputies followed her. As Warren and the deputies walked through the house, she continued to yell and curse at them. When Warren entered the kitchen, she stopped and looked briefly at an ashtray with marijuana cigarette butts in it that was on the kitchen table. According to Burkholder, Warren did not appear to be surprised by the contents of the ashtray.

---

1. In DeVenney's experience, marijuana users break up cigars, clear out the tobacco from the cigar, put marijuana inside, and reroll it.

After Warren checked every room in the house, she walked into the garage. As the deputies tried to explain to her why they were there, they heard a noise at the back door of the garage. Warren pulled back a black trash bag that was hanging on the door's window and found Hayes standing outside. She covered the window, turned back to the deputies, and resumed yelling and cursing at them.

Warren finally calmed down by the time the detectives arrived with the search warrant. During the ensuing search, the detectives found evidence of marijuana and drug paraphernalia throughout Warren's house. In a kitchen cabinet, the detectives found two bricks of marijuana that together weighed 903.83 grams, which is approximately two pounds. On the same shelf in that cabinet, they found a large digital scale that had visible marijuana residue on it. In a drawer below the cabinet, the detectives found plastic baggies and loose marijuana. The drawer also contained mail addressed to Warren. When they searched the master bedroom, the detectives found a marijuana bong in plain view. In the garage, they found several small suitcases containing marijuana residue. They also found packing material similar to the material that was used to pack the two bricks of marijuana found in the kitchen cabinet. Additionally, the detectives found marijuana seeds, stems, and small pieces of marijuana all over the garage floor, and tools with marijuana residue on them.

The State subsequently charged Warren with the class C felony of possession of a controlled substance, namely, more than thirty-five grams of marijuana, in violation of section 195.202.1, RSMo 2000. A bench trial was held. The court found Warren guilty. The court sentenced her to five years imprisonment but suspended execution of the sentence and imposed five years of supervised probation. Warren appeals.

■ In her first point, Warren claims that there was insufficient evidence to prove that she consciously and intentionally possessed more than thirty-five grams of marijuana and was aware of its presence and nature. She concedes that she did not adequately preserve this claim for appeal because she failed to move for a judgment of acquittal at the close of all the evidence. *State v. Willis,* 97 S.W.3d 548, 556 (Mo. App.2003). She asks for plain error review.

■ Review for plain error under Rule 30.20 involves a two-step process. *State v. Brink,* 218 S.W.3d 440, 448 (Mo. App.2006). First, we must determine if the claim on its face establishes substantial grounds to find that manifest injustice or miscarriage of justice has resulted. *Id.* "Errors are plain if they are evident, obvious, and clear." *Id.* "In the absence of such error, we should decline to exercise our discretion to review the claimed error under Rule 30.20." *Id.* "If we find plain error on the face of the claim, we may proceed, at our discretion, to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected." *Id.* "If the evidence is insufficient to sustain a conviction, plain error affecting substantial rights is involved from which manifest injustice must have resulted." *State v. Withrow,* 8 S.W.3d 75, 77 (Mo. banc 1999). We, therefore, exercise the discretion granted to us by Rule 30.20 to consider as plain error Warren's claim that the evidence was insufficient to prove possession.

■ When reviewing a challenge to the sufficiency of the evidence, our role is limited to determining whether sufficient evidence exists from which a reasonable trier of fact might have found the defen-

dant guilty beyond a reasonable doubt. *State v. Duff,* 281 S.W.3d 320, 325 (Mo. App.2009). In making this determination, we view the evidence and all reasonable inferences in the light most favorable to the verdict and disregard all contrary evidence and inferences. *Id.* We defer to the circuit court's decision as to the credibility and weight of the witnesses' testimony, and we recognize that the circuit court "may believe all, some, or none of the testimony of a witness." *State v. Crawford,* 68 S.W.3d 406, 408 (Mo. banc 2002).

To obtain a conviction against Warren for possession of more than thirty-five grams of marijuana, the State had to prove that she (1) consciously and intentionally possessed the marijuana, either actually or constructively; and (2) was aware of or knew of the presence and nature of the marijuana. § 195.202.1; *State v. Purlee,* 839 S.W.2d 584, 587 (Mo. banc 1992). "Both possession and knowledge may be proved by circumstantial evidence." *Purlee,* 839 S.W.2d at 587.

■■ Warren did not have actual possession of the marijuana found in her kitchen cabinet, as the police did not find it on her person or within her easy reach or convenient control. *Duff,* 281 S.W.3d at 326. Warren can be deemed to have had constructive possession of the marijuana, however, if the facts support an inference that she had knowledge of its presence. *Id.* at 327. A person has constructive possession over a substance if she " 'has the power and intention at a given time to exercise dominion or control over the substance either directly or through another person or persons.' " *State v. Chavez,* 128 S.W.3d 569, 574 (Mo.App.2004) (citation omitted). "[A]t a minimum, constructive possession requires a showing of the defendant's access to and control over the premises where the substance was found." *Duff,* 281 S.W.3d at 327.

■ A "defendant's exclusive control over the premises is sufficient to raise an inference of possession and knowledge." *Id.* In this case, the evidence showed that, although the home was Warren's, she did not have exclusive control over it because Hayes lived with her. When premises are jointly controlled, evidence of additional incriminating circumstances that imply that the defendant knew that the drugs were present and that she had them under her control is required. *Id.* Additional incriminating circumstances may include the defendant's routine and "easy accessibility to the drugs[,] whether others have the same accessibility or not"; a large quantity of drugs on the premises; and the commingling of the defendant's personal property with the drugs. *State v. Gonzalez,* 108 S.W.3d 209, 211–12 (Mo.App.2003). The defendant's " 'being in close proximity to drugs or drug paraphernalia in plain view of the police' " is another incriminating circumstance. *State v. Bacon,* 156 S.W.3d 372, 378 (Mo.App.2005) (citation omitted). Also, the defendant's self-incriminating statements and conduct evidencing consciousness of guilt constitute incriminating circumstances. *State v. Wurtzberger,* 265 S.W.3d 329, 337 (Mo. App.2008). We consider the totality of the circumstances to determine "whether there are sufficient additional incriminating circumstances to prove possession." *Id.*

Additional incriminating circumstances in this case were that the large quantity of marijuana—two bricks weighing approximately two pounds—was found in Warren's kitchen cabinet, an area that was routinely and easily accessible to her. Marijuana and marijuana-related paraphernalia was found in plain view in several rooms in her house, including the master bedroom, the kitchen, and the garage. Warren's personal property, specifically,

mail addressed to her, was found in a kitchen drawer commingled with marijuana residue and plastic baggies.

Not only was marijuana present throughout Warren's home in areas that were readily accessible to her, but she made several admissions that indicated that she knew about the marijuana in her home. She admitted that she smoked marijuana with Hayes before she got pregnant. She admitted to being fully aware that Hayes "smoked quite a bit" of marijuana and that he did so in her home. She knew that there was a tray with marijuana on it in the bedroom in her home. Most importantly, she admitted that she knew about the large digital scale that was found in the kitchen cabinet with the two bricks of marijuana and that she knew that particular scale was used to measure marijuana. A reasonable inference is that she knew about the large quantity of marijuana found in her home that could be measured with the large digital scale.

Warren's behavior toward the law enforcement officers supports this inference. Warren was "very, very agitated" by their presence in her home. She cursed profusely at them, and she continued to be openly hostile to them even after they explained to her that they were there because of her activated burglar alarm. She also made it very clear to them that the house and its contents were under her control. As the officers walked through the house with her, she repeatedly told them to "[g]et the fuck up out of my shit." Furthermore, although Warren's defense at trial was that the marijuana belonged exclusively to Hayes, neither she nor Hayes told this to the law enforcement officers while they were at the house.

The totality of the circumstances supports the circuit court's finding that Warren jointly and constructively possessed the marijuana found in her kitchen cabinet

and that she was fully aware of its nature and presence. The evidence was sufficient to convict her of possession of over thirty-five grams of marijuana. We deny Warren's first point.

 In her second point, Warren claims that the circuit court clearly erred in overruling her motion to suppress the marijuana and drug paraphernalia seized from her home. Our review of the circuit court's ruling on a motion to suppress is limited to determining whether substantial evidence supports the decision. *State v. Edwards,* 116 S.W.3d 511, 530 (Mo. banc 2003). We will reverse the decision only if we find that it is clearly erroneous. *Id.* We view the evidence in the light most favorable to the ruling, disregarding any contrary evidence and inferences and deferring to the circuit court's credibility determinations. *State v. Burnett,* 230 S.W.3d 15, 18 (Mo.App.2007). In reviewing the ruling, we consider both the evidence presented at the pre-trial suppression hearing and any additional evidence presented during the trial. *Edwards,* 116 S.W.3d at 530.

 "The Fourth Amendment of the U.S. Constitution, made applicable to the states through the Fourteenth Amendment, guarantees citizens the right to be free from unreasonable searches and seizures." *Burnett,* 230 S.W.3d at 18. A law enforcement officer's warrantless entry into a home is presumptively unreasonable. *Id.* The State may overcome this presumption, however, if exigent circumstances existed that justified the entry. *Id.* at 18–19. Exigent circumstances " 'exist if the time needed to obtain a warrant would endanger life, allow the suspect to escape, or risk the destruction of evidence.' " *State v. Cromer,* 186 S.W.3d 333, 344 (Mo.App.2005) (citation omitted).

Whether exigent circumstances existed is evaluated on a case-by-case basis. *Burnett*, 230 S.W.3d at 19. The subjective belief of the officer who conducted the entry is not determinative. *State v. Epperson*, 571 S.W.2d 260, 264–65 (Mo. banc 1978). Rather, "[i]n making this assessment, we look to the circumstances as they would have appeared to a prudent, cautious, and trained officer." *Burnett*, 230 S.W.3d at 19.

In this case, the reason that law enforcement officers were at Warren's residence was because they were responding to an activated burglar alarm that was still sounding when the officers arrived. The first officer to arrive, DeVenney, found no one at home and the front door unlocked and ajar. Before entering the home, DeVenney checked with the dispatcher to receive confirmation that the alarm was still active and awaited back-up. It was only after receiving this confirmation and twice knocking and announcing their presence that DeVenney and Burkholder entered the house for the purpose of conducting a protective sweep to check for burglars or residents in need of immediate assistance.

No Missouri case has addressed a warrantless entry into a residence in response to an activated burglar alarm. Courts in other jurisdictions, however, have addressed circumstances that are very similar to those in this case and found that they justified a warrantless entry. In *United States v. Tibolt*, 72 F.3d 965, 970–71 (1st Cir.1995), the court held that an activated security alarm, an unlocked door, and the lack of a response when the officer attempted to communicate with anyone who might be inside the residence constituted exigent circumstances. The court noted that these circumstances "significantly enhanced the likelihood of an intruder" and reasoned that, without immediately entering the home, the officer could not know whether an intruder was still in the home or whether a resident of the home was injured or was being forcibly detained. *Id.* at 970. Following *Tibolt*, the court in *United States v. Dighera*, 2 F.Supp.2d 1377, 1380 (D.Kan.1998), held that officers who responded to an activated security alarm at a residence and found an open door and no one responding to their presence "acted reasonably in entering the home and searching for possible burglary suspects or injured or incapacitated residents." *See also United States v. Brown*, 449 F.3d 741, 748–50 (6th Cir.2006).

Similarly, in *United States v. Porter*, 288 F.Supp.2d 716, 720–22 (W.D.Va.2003), the court held that an activated home security alarm along with the responding officers' finding an unlocked door justified entry under the exigency doctrine. The court explained that the officers had a duty to investigate the activated alarm because "the very presence of a security system in the defendant's home suggests the police would be in dereliction of their duties had they not decided to investigate absent the presence of a resident." *Id.* at 721. While the court was not suggesting that officers "have license to enter a private residence every time an alarm is activated," the court stated that officers "do have a duty to investigate, and, when the facts and circumstances suggest reasonable suspicion that an exigency exists, to enter the home." *Id.* at 721–22. The court said that, in such circumstances, " '[i]t would defy reason to suppose that [law enforcement officers] had to secure a warrant before investigating, leaving the putative burglars free to complete their crime unmolested.' " *Id.* at 722 (quoting *United States v. Singer*, 687 F.2d 1135, 1144 (8th Cir.1982)).

We find the reasoning of these cases persuasive. Here, as in *Tibolt, Dighera,*

and *Porter*, law enforcement officers acted reasonably in responding to and investigating the activated burglar alarm at Warren's residence. Upon finding the door to the residence unlocked and ajar, confirming that the alarm was still active, and twice knocking and announcing their presence and receiving no response, they were justified in entering Warren's home based upon the exigent circumstances exception to the warrant requirement. Because the officers lawfully entered the residence, their seizure of the evidence discovered in plain view and pursuant to the subsequent warrant was valid. The circuit court did not clearly err in overruling Warren's motion to suppress and in admitting the evidence at trial. We deny Warren's second point.

We, therefore, affirm the circuit court's judgment convicting Warren of possession of more than thirty-five grams of marijuana.

All concur.